IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES )<br>)<br>v.  )<br>)<br>WILLIAM F. KAETZ, )<br>)<br>)<br>Defendant. ) | 2:20-CR-1090-1 |

## MEMORANDUM ORDER

**J. Nicholas Ranjan, United States District Judge**[1]

Following a detention hearing, Chief Magistrate Judge Eddy ordered Defendant William Kaetz to be detained pending trial. Mr. Kaetz now moves the Court to reconsider the detention order and to grant him pretrial release. ECF 1. After carefully considering the parties' briefs and submissions, the detention-hearing transcript, and the relevant legal authorities, the Court will deny Mr. Kaetz's motion.

## BACKGROUND

Mr. Kaetz is charged with two counts via criminal complaint: (1) interstate communications containing threats to injure, in violation of 18 U.S.C. § 875(c); and (2) threats to assault and murder a United States judge, in violation of 18 U.S.C. § 115(a)(1)(B). MJ ECF 1. On October 26, 2020, following a combined preliminary and detention hearing that same day, Chief Magistrate Judge Eddy found probable cause that Mr. Kaetz committed the charged offenses. MJ ECF 13.

During the October 26, 2020, combined preliminary and detention hearing, the government called Paul Safier as its sole witness. MJ ECF 20, p. 5. Inspector Safier

---

[1] Pursuant to 28 U.S.C. § 292(b), the Honorable J. Nicholas Ranjan of the United States District Court for the Western District of Pennsylvania hereby presides by designation. Before the undersigned was assigned to this case, Chief Magistrate Judge Eddy of the Western District of Pennsylvania presided, at a different case number. *See United States v. Kaetz*, No. 2:20-mj-9421-CRE-1, ECF 7 (D. N.J. Oct. 19, 2020). References to "MJ ECF X" are to entries on that docket; references to "ECF X" are to entries on the No. 20-cr-1090-1 docket.

is a senior inspector with the United States Marshals Service in the District of New Jersey, having served with the U.S. Marshals Service for about 29 years. *Id.* His primary responsibility is to conduct investigations and threat assessments that concern Marshals Service-protected persons and facilities, which include federal judges. *Id.* at pp. 5-6. Inspector Safier testified as follows.

In September 2020, Inspector Safier began investigating Mr. Kaetz. *Id.* at p. 7. According to Inspector Safier, Mr. Kaetz began reaching out to a federal judge in New Jersey ("Judge 1"),[2] before whom Mr. Kaetz had at least three civil actions pending. *Id.* at pp. 6-7. While Mr. Kaetz initially filed documents electronically in his cases, on September 24, 2020, Mr. Kaetz mailed several court documents (in an envelope bearing Mr. Kaetz's return address) to Judge 1's home address. *Id.* at pp. 7-9. That same day, to assess Mr. Kaetz, deputy marshals interviewed Mr. Kaetz at his home. *Id.* at p. 9. During the interview, Mr. Kaetz stated that he learned Judge 1's home address through a paid Internet-based search service. *Id.* at p. 10.

On September 30, 2020, the U.S. Marshals Service learned that Mr. Kaetz had also left a voicemail message on Judge 1's Chamber's message service. *Id.* at p. 10. While the marshals learned of this on September 30, Mr. Kaetz had actually left the voicemail on September 18, 2020 (*i.e.*, six days before his mailed documents arrived at Judge 1's home). *Id.* In this voicemail, Mr. Kaetz identified himself and expressed his displeasure with Judge 1's actions in his cases before Judge 1. *Id.* at p. 11. Because the marshals had just interviewed Mr. Kaetz on September 24, the marshals

---

[2] During the combined preliminary and detention hearing, counsel and the witnesses referred to the targeted judge as "Judge 1," to protect the judge's identity and safety. For the same reasons, this Court refers to the judge in the same manner.

did not interview him again when they learned of the voicemail on September 30. *Id.* at p. 36.

On October 18, 2020, around 5:00 a.m., Mr. Kaetz emailed Judge 1's personal email address. *Id.* at p. 11-12, 15. The email was also sent to several other recipients, including a U.S. Marshal's general email address. *Id.* at p. 13. Mr. Kaetz's email stated:

> Hello, U.S. Marshals. I filed this case a long time ago. It is to enforce Article IV, Section 4 of the U.S. Constitution. [Judge 1] has been avoiding and stonewalling the case. It is of national importance. [Judge 1] is a traitor and that has a death sentence. I would rather use the pen than the sword, but as this push for communism becomes all too real there will come a time to take down those people that fail to do their job to be loyal to this nation and that will be people like the traitor [Judge 1]. I have a motion for [Judge 1's] recusal, motions to reopen the case as per [Judge 1's] order, motions to expedite the case, and I will be filing a mandamus. I will try my best not to harm the traitor [Judge 1] but, like I said, [Judge 1] is a traitor and needs to be dealt with. You have an obligation to remove [Judge 1]. Read the court documents. The traitor [Judge 1] lives at, [*correct address redacted*]. Stop by and ask [Judge 1] why [Judge 1] is stonewalling my case. [Judge 1's] home address will become public knowledge very soon, and God knows who has a grievance and what will happen after that. You want to protect the traitor [Judge 1], enforce the Constitution. You come after me for writing this email will prove it's time to take up arms and civil war is inevitable. Remember your oath of office. This case must be opened and move forward now. This needs to be done now before the vote.

*Id.* at pp. 14-15. Mr. Kaetz signed the email, and included some attachments of his court documents. *Id.* at p. 15; ECF 1, p. 6.

Later that day, Mr. Kaetz also posted two social media posts relating to Judge 1. *Id.* at p. 18. On Twitter, Mr. Kaetz posted: ". . . Judge 1 is stonewalling [my] case. Traitor [Judge 1] lives at, [*correct address redacted*]. Let [Judge 1] feel your anger

for [Judge 1's] violation of [Judge 1's] oath of office." *Id.* at p. 19. And on Facebook, Mr. Kaetz posted: ". . . [Judge 1] has been avoiding and stonewalling [my] case. It is of national importance. The traitor [Judge 1] lives at, [*correct address redacted*]. Please send [Judge 1] a message on how you feel about [Judge 1's] failure to protect your rights and violate [Judge 1's] oath of office." *Id.* at p. 21. In these social media posts, Mr. Kaetz posted Judge 1's actual home address. *Id.*

Because of his email and posts on October 18, Mr. Kaetz was arrested that same day. *Id.* at p. 22. Inspector Safier testified that, during Mr. Kaetz's arrest, Mr. Kaetz attempted to evade arrest, resulting in Mr. Kaetz being tased. *Id.* at p. 23. After arriving at the detention facility, Mr. Kaetz stated that he may have been drunk when he sent the October 18 email. *Id.*

On October 26, 2020, before Mr. Kaetz's combined preliminary and detention hearing, the FBI executed a search warrant at Mr. Kaetz's home. *Id.* at p. 29. Inside the home (where Mr. Kaetz lived with his sister and daughter), authorities found drug paraphernalia, a bolt-action rifle, and ammunition. *Id.* at p. 29; ECF 4-3. Relevant to the rifle and ammunition, Mr. Kaetz has a prior felony conviction arising from him mailing a death threat to an IRS official in 2002 (discussed below). *Id.* at pp. 23-24. Additionally, law enforcement also discovered that Mr. Kaetz in 2019 had applied for a firearms permit, which was denied. *Id.* at p. 25.

After Inspector Safier concluded his testimony, the government also proffered the information in the criminal complaint. *Id.* at p. 29; MJ ECF 1.

Following Inspector Safier's testimony, Mr. Kaetz incorporated the pretrial services report from the New Jersey Probation Office and called Catherine Kaetz, Mr. Kaetz's 28-year old daughter, to testify. MJ ECF 20, pp. 48-56. Ms. Kaetz was presented as Mr. Kaetz's proposed third-party custodian should he be released on bond. Ms. Kaetz testified that she lives with her father, and is currently unemployed; she otherwise works on a temporary or per diem basis for her father's construction

business. *Id.* at pp. 48-53. She further testified that she leaves the house "a lot" and "really enjoy[s]" visiting her mom, who lives two hours from Mr. Kaetz's home. *Id.* at pp. 53-54. Ms. Kaetz also testified about her own civil lawsuit, in which Mr. Kaetz is a co-plaintiff, that is pending before Judge 1. *Id.* at p. 55. She stated that she's "a little frustrated" with Judge 1's actions in the case. *Id.* at pp. 55-56.

After Ms. Kaetz finished her testimony, Chief Magistrate Judge Eddy concluded that pretrial detention was warranted, finding "by clear and convincing evidence, that no conditions will reasonably ensure the safety of the community." *Id.* at p. 63.[3] As a result, Chief Magistrate Judge Eddy ordered Mr. Kaetz to be detained pending trial. MJ ECF 15.

Mr. Kaetz now moves this Court to reconsider and vacate the detention order and grant him pretrial release. ECF 1, 7. The government opposes his motion. ECF 4. The parties have filed briefs and other materials, which the Court has reviewed. The Court has also reviewed the detention-hearing transcript and record. The matter is now ready for disposition.

## **LEGAL STANDARD**

Under the Bail Reform Act, "If a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). The district court reviews the magistrate judge's detention order *de novo*. *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985). If the record was fully developed before the magistrate judge, "and the parties have not proffered any additional evidence which would materially alter the decision of the Magistrate Judge . . . the [District] Court will rule on the record established before the Magistrate Judge." *United States v. Bastianelli*, No. 17-305, 2018 WL 1015269, at *4 (W.D. Pa. Feb. 22, 2018). The

---

[3] During the hearing, Mr. Kaetz's risk of flight did not appear to be at issue, or at least was not presented as a basis for detaining him.

district court "is not required to hold a new evidentiary hearing." *United States v. Harry*, No. 19-246, 2020 WL 1933990, at *2 (D. N.J. April 22, 2020) (citation omitted); *see also United States v. Talbert*, No. 20-266, 2020 WL 6048788, at *3 (W.D. Pa. Oct. 13, 2020) ("[No] additional or independent evidentiary hearing [is required] by the district court, and the court may incorporate the transcript of the proceeding before the magistrate judge, including any admitted exhibits." (citation omitted)). "The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f)(2)(B).

A court "shall order the detention of a person" pending trial if the court determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). The burden is on the government "to demonstrate by clear and convincing evidence that Defendant is a danger to the community and/or by a preponderance of the evidence that Defendant is a flight risk." *United States v. Oliver*, No. 16-40, 2016 WL 1746853, at *5 (W.D. Pa. May 3, 2016) (citing *United States v. Perry*, 788 F.2d 100, 115 (3d Cir. 1986)); *United States v. McIntyre*, No. 16–13, 2018 WL 385034, at *3 (D. N.J. Jan. 10, 2018). Thus, the government bears the ultimate burden of proving that there are no "conditions [of release that] will reasonably assure the appearance of [Defendant] as required and the safety of any other person and the community[.]" *See* 18 U.S.C. § 3142(e).

In determining whether the government has met its burden, and thus whether detention is warranted, the Court weighs the evidence in light of the four factors of Section 3142(g): (1) the nature and circumstances of the offense charged, including whether the offense is a "crime of violence"; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including his character; physical and mental condition; family; employment; finances; length of residence; ties

to community; drug abuse history; criminal history; record of appearance at court proceedings; and whether he was on bond, probation, or parole at the time of the charged offense; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

## DISCUSSION & ANALYSIS

For the reasons discussed below, and based on a *de novo* review of the relevant Section 3142(g) factors and the record before Chief Magistrate Judge Eddy, the Court finds that the government has satisfied its burden of establishing that Mr. Kaetz is a danger to the community—and more specifically, to Judge 1—if he is released. Detention is therefore warranted.[4]

**I.  Nature and circumstances of the offense charged.**

Mr. Kaetz is charged with two serious offenses: interstate communications containing threats to injure, in violation of 18 U.S.C. § 875(c); and threats to assault and murder a United States judge, in violation of 18 U.S.C. § 115(a)(1)(B). Mr. Kaetz concedes that these offenses are "crimes of violence," as specified in 18 U.S.C. § 3142(g)(1). ECF 1, p. 5.

Mr. Kaetz's offenses are not only serious, but the circumstances surrounding them are troubling. In his October 18 email to Judge 1 and others, Mr. Kaetz stated that Judge 1 is a "traitor," which warrants "a death sentence"; that "there will come a time to take down [people] . . . like the traitor Judge 1"; that Judge 1 "needs to be dealt with"; and that Mr. Kaetz will publicize Judge 1's home address and "God knows who has a grievance and what will happen after [Mr. Kaetz publicizes Judge 1's home

---

[4] The Court, like Mr. Kaetz and the government, focuses its analysis on Mr. Kaetz's risk of danger to the community—specifically, to Judge 1—if Mr. Kaetz were released. The Court, however, also has concerns that Mr. Kaetz could be a flight risk. Evidence of flight is based on his resisting arrest, and the need for law enforcement to tase him when detained. *See United States v. Livingston*, No. 15-cr-627, 2016 WL 1261464, at *3 (D. N.J. Mar. 31, 2016) (concluding that a defendant's "efforts to avoid arrest" weigh in favor of pretrial detention due to flight risk) (citation omitted).

address]." MJ ECF 20, pp. 14-15. Mr. Kaetz, in his email, also stated that "it's time to take up arms and civil war is inevitable" if the authorities "come after" Mr. Kaetz. *Id.* at p. 15. Further, the same day he sent the email to Judge 1, Mr. Kaetz posted two social media posts (on Facebook and Twitter). *Id.* at pp. 18-22. In his Twitter post, consistent with his emailed threats, Mr. Kaetz publicized Judge 1's home address and invited others to "let Judge 1 feel your anger." *Id.* at p. 19. Similarly, in his Facebook post, Mr. Kaetz posted Judge 1's home address and invited others to "send Judge 1 a message on how you feel." *Id.* at p. 21. Thus, not only did Mr. Kaetz email his death sentence threats and civil war threats to Judge 1, that same day, he also followed through on his threat to publicize Judge 1's home address.

Additionally, when the FBI searched Mr. Kaetz's home, they found large caliber ammunition and a bolt-action rifle. MJ ECF 20, p. 29; ECF 4-3.[5] And relatedly, in 2019, Mr. Kaetz applied for a firearms permit, but was denied in part due to his prior felony conviction. MJ ECF 20, p. 25. The Court finds that the presence of firearms and ammunition, along with Mr. Kaetz's attempt to obtain a firearm permit, add an additional degree of danger to Mr. Kaetz's offenses. *See United States v. Gonzalez*, 675 F. Supp. 208, 210 (D. N.J. Dec. 22, 1987) ("[T]he circumstances surrounding the arrest of [Defendant], which include the discovery of two fully loaded automatic weapons at that defendant's residence, are also relevant to the court's determination."); *Talbert*, 2020 WL 6048788, at *4.

Mr. Kaetz argues that because he included various court documents as attachments in his email to Judge 1, this puts his email into context, shows that the email is not a threat, and thus that this § 3142(g) factor favors release. ECF 1, pp. 6-

---

[5] It is unclear if the ammunition found was the appropriate caliber for the bolt-action rifle. MJ ECF 20, p. 46. The Court therefore does not assume that the bolt-action rifle and the ammunition were compatible. Nonetheless, the presence of both items is relevant to the risk of harm if Mr. Kaetz is released.

7. He also argues that because he sent his email to the Marshals Service and the Department of Justice, and was allegedly intoxicated when he sent the email, this further shows that Mr. Kaetz did not truly mean to threaten Judge 1. *Id.* at pp. 7-8.

The Court disagrees. First, the Court does not perceive how Mr. Kaetz's inclusion of court documents in his email in any way diminishes the seriousness of his threats. Second, the fact that Mr. Kaetz emailed his threats to a wider audience does not diminish the seriousness of his threats. Indeed, such evidence is probative of more erratic, irrational, and threatening behavior. And third, there is no evidence that Mr. Kaetz was intoxicated when he sent the email (except for his say-so); but even if he were, his social media posts later in the day indicate that his feelings and intent as to Judge 1 were not dependent on his intoxication. At bottom, Mr. Kaetz's arguments do not diminish the seriousness of his charged offenses.

For these reasons, considering the nature and circumstances of Mr. Kaetz's "crime of violence," the Court concludes that this factor weighs in favor of detention. *See United States v. Kabbaj*, No. 16-365, 2016 WL 11660082, at *11-12 (E.D. Pa. Sept. 12, 2016).

## II. Weight of the evidence.

The weight of the evidence against Mr. Kaetz is strong. Chief Magistrate Judge Eddy already found probable cause that Mr. Kaetz committed the offenses. MJ ECF 13. And after reviewing the record *de novo*, this Court concludes that this § 3142(g) factor supports detention.

To sustain a conviction for violating 18 U.S.C. § 875(c), the government must show that Mr. Kaetz transmitted a communication in interstate commerce, which contained a threat. *See Elonis v. United States*, 135 S. Ct. 2001, 2008 (2015). This requires the government to show both a subjective and objective component. *United States v. Elonis*, 841 F.3d 589, 596 (3d Cir. 2016). The subjective component requires Mr. Kaetz to have "transmitted a communication for the purpose of issuing a threat,

- 9 -

or with knowledge that the communication would be viewed as a threat." *Id.* (citing *Elonis*, 135 S. Ct. at 2012) (cleaned up). The objective component requires Mr. Kaetz to have "transmitted a communication that a reasonable person would view as a threat," rather than "hyperbole, satire, or humor." *Id.* at 596-97.

To sustain a conviction for violating 18 U.S.C. § 115(a)(1)(B), the government must show that "(1) [Mr. Kaetz] threatened to assault or murder; (2) a federal judge; (3) with the intent to impede, intimidate, interfere with, or retaliate against that judge, on account of the judge's performance of official duties." *United States v. D'Amario*, 330 F. App'x 409, 412 (3d Cir. 2009).

Here, the evidence shows that Mr. Kaetz emailed Judge 1, a United States judge, accusing Judge 1 of being a traitor—thus warranting a death sentence—who "needs to be dealt with." MJ ECF 20, p. 14. The evidence also shows that Mr. Kaetz has, or had, three cases pending before Judge 1, and his disagreement with Judge 1's handling of these cases prompted Mr. Kaetz's threats. *E.g.*, *id.* at pp. 6-7, 14-15. The record further indicates that Mr. Kaetz at least knew his email would be viewed as a threat, as evidenced by his emailed statement that it would be "time to take up arms and civil war" if the authorities "come after me for writing this email." *Id.* at p. 15. Mr. Kaetz was thus aware of how his email would be perceived.

With respect to the objective part of the § 875(c) analysis, viewing the evidence here, it is clear to the Court that a reasonable person would view Mr. Kaetz's email as a threat. The e-mail clearly connotes threatening language; the email lacks indicia of humor, satire, or hyperbole; and the circumstances surrounding the email—including Mr. Kaetz's frustration and infatuation with Judge 1, his search for and publicization of Judge 1's home address, and his interest in and the presence of firearms in his home—suggest a reasonable person would view the email as a threat. *See United States v. C.S.*, 968 F.3d 237, 245 (3d Cir. 2020) ("[A] reasonable person could perceive [Defendant's] statements about violence and terrorist attacks as

serious because he had the means to act on them. Put differently, a reasonable person could infer that the seriousness with which [Defendant] pursued and displayed his interest in violence and terrorism shows that [Defendant's] statements on those subjects were not jokes, hyperbole, or throwaway remarks.").

Accordingly, the Court concludes that the weight of the evidence favors detention.[6]

### III. History and characteristics of Mr. Kaetz.

The Court finds that the third § 3142(g) factor—Mr. Kaetz's history and characteristics—also weighs in favor of detention.

Significantly, Mr. Kaetz's instant offenses are not his first criminal offense involving threats to assault or murder a federal official. In December 2002, Mr. Kaetz pled guilty to one count of violating 18 U.S.C. § 876, which arose from Mr. Kaetz mailing a threatening letter to an IRS official. *See United States v. Kaetz*, 2:02-cr-752-RBS-1, ECF 17 (E.D. Pa. Dec. 16, 2002). Mr. Kaetz's letter threatened that he would "come after" the IRS official, "use deadly force" against her, and warned that

---

[6] Mr. Kaetz's arguments to the contrary are unavailing. He argues that his purported intoxication, the fact that he sent the email in the early morning, and the fact that he did not try to hide his identity in his communications, weigh against detention. He further argues that his inclusion of court documents with his email to Judge 1, and his references to his cases before Judge 1, weigh against detention. Specifically, Mr. Kaetz asserts that these considerations indicate he had no subjective intent to threaten Judge 1, nor that an objective person could consider his email a threat. ECF 1, pp. 10-13. But as already discussed above, these considerations do not diminish his threats against Judge 1. Nor do they counterbalance the evidence revealing Mr. Kaetz's subjective intent, and the language of the e-mail itself, which was objectively threatening. After weighing the evidence, this Court, like Chief Magistrate Judge Eddy, concludes the weight of the evidence favors pretrial detention.

Likewise, Mr. Kaetz's references to the First Amendment are unpersuasive. *Id.* at pp. 14-15. "Activities that injure, threaten, or obstruct are not protected by the First Amendment, whether or not such conduct communicates a message." *United States v. Gregg*, 226 F.3d 253, 267-68 (3d Cir. 2000); *see also D'Amario*, 330 F. App'x at 413 (noting that "true threats" are not protected by the First Amendment).

Mr. Kaetz knew where she lived. ECF 4-2; *Kaetz*, 2:02-cr-752-RBS-1, ECF 14 (Nov. 8, 2002). After pleading guilty, Mr. Kaetz then violated the conditions of his probation. *Kaetz*, 2:02-cr-752-RBS-1, ECF 51, 52 (Mar. 20, 2006).

The Court concludes that this history strongly favors pretrial detention, as it shows that Mr. Kaetz poses a danger to the community and that he is unwilling to follow the conditions of his release. *See United States v. Jackson*, No. 20-161, 2020 WL 3056444, at *6 (D. N.J. June 9, 2020) ("Most tellingly, Defendant committed the present offense . . . while out on pretrial release. This establishes an obvious willingness to violate conditions of release."); *United States v. Harris*, No. 13-59, ECF 277, p. 8 (W.D. Pa. Apr. 16, 2020) ("The best predictor of how a defendant will behave if he were to be released is how he behaved when released in the past." (cleaned up)). Mr. Kaetz has a history—and it appears, a proclivity—to threaten the life or wellbeing of federal officials when he disagrees with their actions. This favors pretrial detention.

Further, Mr. Kaetz's interest and attempt to obtain a firearm—possession of which is illegal due to his prior felony—further favors detention. *See* MJ ECF 20, p. 25. Considering Mr. Kaetz's history of threatening the life and wellbeing of federal officials, his attempt to obtain a firearm permit, and the presence of a rifle and large

caliber ammunition in his home, the Court concludes that this third § 3142(g) factor weighs in favor of detention due to the danger he poses to the community.[7]

**IV. Nature and seriousness of the danger to any person or the community that would be posed by Mr. Kaetz's release.**

Finally, the Court concludes that the fourth § 3142(g) factor also supports pretrial detention.

The danger posed by Mr. Kaetz's release is significant, particularly concerning Judge 1. Mr. Kaetz threatened the life of Judge 1, specifically stating that Judge 1, as a "traitor," deserves the "death penalty" and "needs to be dealt with." MJ ECF 20, p. 14. The nature of the danger to Judge 1—death—is at its peak. Further, Mr. Kaetz publicized Judge 1's home address, inviting others in the public to use that information to let Judge 1 "feel your anger" and to "send Judge 1 a message on how you feel." *Id.* at pp. 18-21. Indeed, the danger posed by Mr. Kaetz to Judge 1 has only increased over time as he grew more frustrated with Judge 1: Mr. Kaetz originally filed court documents electronically (*id.* at p. 7); then he left a voicemail at Judge 1's chambers (*id.* at pp. 10-11); then he mailed documents to Judge 1's home address (*id.* at pp. 7-8); and finally, he emailed Judge 1 "death penalty" threats and publicized Judge 1's home address (*id.* at pp. 14-15). Releasing Mr. Kaetz would simply allow him to take further steps in escalating the risk of harm he poses to Judge 1.

Relatedly, if Mr. Kaetz were released on bond, the Court isn't convinced that Mr. Kaetz's 28-year old daughter would be a suitable custodian, or could mitigate any

---

[7] In asserting that his history and characteristics support pretrial release, Mr. Kaetz emphasizes his involvement with fitness activities, and his trouble adapting to life amid the COVID-19 outbreak and its resulting shutdowns. ECF 1, pp. 16-26. As well, he provides several letters from his acquaintances. *Id.* Mr. Kaetz also maintains relationships with his fiancé and daughter. *Id.* at pp. 26-27. The Court, however, concludes that these considerations do not overcome the reasons discussed above for denying release, and do little to assuage the concerns regarding the danger to Judge 1 that Mr. Kaetz's release would pose.

risk of harm posed by her father. The suitability of a custodian is a relevant consideration in determining whether pretrial release is warranted. *See United States v. Davis*, Nos. 17-271 & 18-41, 2018 WL 2937537, at *4 (W.D. Pa. June 12, 2018) ("[T]he mere fact that a relative or other individual is willing to serve as a third party custodian for a defendant is not sufficient to justify release on such conditions but is among the factors to be considered when evaluating whether release or detention is appropriate in a given case."). Ms. Kaetz is unemployed, and whatever income she has is dependent on her father's job. MJ ECF 20, p. 50. Ms. Kaetz also visits her mother often, who lives several hours from Mr. Kaetz's home. *Id.* at pp. 53-54. Further, Mr. Kaetz committed his offenses while already living with Ms. Kaetz. *See id.* at p. 49. And Ms. Kaetz (alongside her father) is involved in a civil case that was pending before Judge 1, and she is admittedly "frustrated" with how Judge 1 has handled the case. *Id.* at pp. 55-56. The Court thus finds that the fourth § 3142(g) factor supports pretrial detention.

In sum, weighing the relevant factors under the Bail Reform Act, the government has proven by clear and convincing evidence that Mr. Kaetz presents a danger to Judge 1 if released and there are not conditions of release that will reasonably assure the safety of Judge 1 should Mr. Kaetz be released. Pretrial detention is therefore warranted.[8] 18 U.S.C. § 3142(e).

## CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Mr. Kaetz's Motion to Reconsider Detention Order (ECF 1) is **DENIED**.

---

[8] In his motion, Mr. Kaetz also briefly references the general risk of COVID-19 exposure in prison, and the limited access Mr. Kaetz would have to his counsel in prison. ECF 1, pp. 32-35. But the general risk of COVID-19 exposure does not compel pretrial release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he

DATED: January 4, 2021              BY THE COURT:

                                    /s/ *J. Nicholas Ranjan*
                                    United States District Judge
                                    **Sitting by designation*

---

mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"); *United States v. Somerville*, 463 F. Supp. 3d 585, 596-97 (W.D. Pa. 2020). And Mr. Kaetz has not presented sufficient, or any, grounds to find he would not have adequate access to counsel. *See United States v. Hall*, 2:20-cr-340-NR-1, ECF 32, pp. 9-11 (W.D. Pa. Dec. 16, 2020).

Further, in his reply brief, Mr. Kaetz argues that because of the postponement of trials due to COVID-19, and because no indictment has yet been filed against him, his "speedy trial rights are being violated—covid or no covid." *See* ECF 7. But due to the exceptional circumstances caused by COVID-19, and pursuant to 18 U.S.C. § 3161 *et seq.*, the District of New Jersey, through an order issued by Chief Judge Wolfson, has postponed jury trials until March 12, 2021, and has continued the 30-day period to file an indictment (per 18 U.S.C. § 3161(b)) until March 12, 2021. *See Third Extension of Standing Order 2020-12* (Dec. 17, 2020) (available at https://www.njd.uscourts.gov/sites/njd/files/3d_Ext_SO_20-12_Stamped.pdf). This time through March 12, 2021 is properly considered "excluded time" under the Speedy Trial Act. *See id.* at ¶¶ 2-3 (citing 18 U.S.C. § 3161(h)(7)(A), (B)). The Court's order is supported by detailed findings, and provides a sound factual and legal basis that any delays are supported by the ends of justice, consistent with the Speedy Trial Act and the Sixth Amendment. Thus, the Court finds that there has been no undue delay and no violation of Mr. Kaetz's speedy trial rights.